Morgan, J.
Writ of error by the defendant in the -lower court from a judgment against it for $700 in an action for damages claimed on account of the death of the plaintiffs’ son who- was .killed in defendant’s -coal mine by the falling of a large rock from the roof of the room in which the son and his father were at work mining coal.
The numerous assignments of error are within the scope of three propositions of law discussed in the briefs: (1), the *555 insufficiency of the allegation that the plaintiffs are the father and mother of the deceased; (2), the right of the father and mother to sue, and (3), the right of a recovery at all on the merits under the evidence.
First. It is not good pleading to allege by way of recital a material fact. The complaint alleges the relationship as follows: “The plaintiffs in this cause, Antone and Kate Kovaics, mother and father of said Andrew Kovaics, are his sole heirs at law.” The words “mother and father of said Andrew Kovaics,” inserted merely in apposition with the names of the plaintiffs, is a mere recital and is not a positive, affirmative allegation that the plaintiffs are the father and mother, and the allegation, therefore, is defective. Leadville Water Co. v. Leadville, 22 Colo. 227, 45 Pac. 362; Bliss on Code Pleading, 3rd or 4th Ed., sec. 318; Pomeroy’s Code Remedies, 2nd or 3rd Ed., secs. 549, 597, and cases cited. This is a technical objection, however, and the defect should have been attacked by a motion to make more specific. Pomeroy’s Code Remedies, supra. No such motion was intérposed and the defect was thereby waived, and should receive no consideration here. “This court will never encourage a practice that will tolerate concealment of objections in trial courts for the purpose of overthrowing the judgments of such courts upon review.” Black v. Bent, 20 Colo. 342, 344, 38 Pac. 387, 388.
Furthermore, the relationship was treated as an issue in the case throughout the trial and in the instructions without specific objection. It is true an objection was made when the plaintiff offered to proye the relationship that such proof was irrelevant to the issues as made, and later on, the complaint was attacked on the ground that it did not state a cause of action. This was equivalent to a general demurrer to the complaint and it was properly overruled. The complaint stated a cause of action as against a general demurrer, but in a defective manner as against a motion to make more specific. Pomeroy’s Code Rem., supra, and cases cited. This defect in *556 the complaint and the objection thereto* is hardly worthy of consideration, but page after page has been written by the authors on code pleading and by the courts in the opinions concerning the same; the majority of which, however, reach the conclusion that the defect is one of form as distinguished from one of material matter, and if not taken advantage of by a motion to make more specific, instead of by a general demurrer or objection to- the evidence' on the ground that the complaint does not state a cause of action, it is waived. Mills’ Ann. Code, pp. 197, 198.
Second. It is then contended that the father and mother have no right of action for the death of the son on account of the provision in the coal mining act that a right of action “shall accrue to the widow and the lineal heirs of the person whose life is lost.” Sec. 649., Rev. St. 1908.
It is true that, under the common law of descent, following the feudal system, the father and mother and all persons in the ascending line could not inherit. Cooley’s Blackstone, 4th ed., 601-04, but even in England this rule was altered, by the statutes of 3 and 4 Wm. IV, Ch. 106. (Cooley’s Blackstone, supra, p. 624), so that “the nearest lineal ancestor, or his issue,” could inherit “on failure of issue of the last purchaser.” So* in the United States, similar changes have been made but with no* definite uniformity In this, state it has been enacted, sec. 7040, R. S. 1908, that the father and mother may inherit if there be no children nor their descendants. The statute thus defining the word “heir” as including the father and mother, was in force at the time the coal mining act was passed. A lineal heir is one who inherits in line either ascending or descending from the common source as distinguished from a collateral heir. Cooley’s Blackstone, supra, 598; Bouvier’s Raw Dictionary, “Consanguinity;” Beard v. Skeldon, 113 Ill. 584; Willis Coal and Mining Co. v. Grissell, 198 Ill. 313, 65 N. E. 74. The legislature must have used the words ’’lineal heirs” in the coal mining act according to' the commonly accepted use of such words and in accordance with the *557 existing law in regard to descents, sec. 7040, supra, and also according to sec. 2056, R. S. 1908, the general damage act, in which the father and mother are specifically authorized to sue 'for the death of the child; although, as to- the latter act, it has been held that “heir or heirs” as used therein means “child or children.” Hendry v. Holt, infra. To hold that the term, “lineal heirs,” excludes the father and mother, would compel the adoption of the rule under the feudal system at common law as well as the non-observance of the common use of the words and the statute of the state in reference to descents.
Counsel rely upon Hendry v. Holt, 24 Colo. 464, 51 Pac. 1002, 39 L. R. A. 351, 65 Am. St. 235, in support of fheir contention that the father and mother are not “lineal heirs,” as that term is used in the coal mining act, because in that case, in construing the general damage act, sec. 2056 R. S'. 1908, it is held that “heir or heirs,” as used in that statute, means “child or children.” In that case the action was brought by a niece on account of the death of her uncle, she being his only heir, and the court held that “heir or heirs”' would not include collateral kindred such as niece, and that, in order to give full force to the entire act it was necessary to construe the words, “heir or heirs,” to mean “child or children,” and thus carry out the purposes of the act. Such construction was furthermore, more or less, compelled by the third provesion of that act which would be useless if “heir or heirs” included the father and mother. But in the coaJl mining act the right of action is specifically limited to- the lineal heirs, and to the widow, with no further extension or limitation, and this, act, standing alone as it does, leaves the scope of interpretation and construction so narrow- that the meaning of the words, “lineal heirs,” is alone necessary to- be considered in arriving at the persons entitled to a right of action; or particularly, the question is, do the words, “lineal heirs,” include the father and mother? It seems that the legislature by inserting the word “lineal” before the word “heirs” *558 for the first time in the statutes of this state intended thereby to exclude collateral heirs, only, and thus preserve the same purpose in the coal mining act as in the general damage act, that is, to give the right of action to those who- were entitled to receive the benefits of the person killed, while he lived, to enable them to recover damages for the loss of such benefits in case of his death. To- exclude the father and; mother would be to give a different meaning to the term “lineal heirs” than the commonly accepted one, and different from the statute of descents, as well as to- deprive the father and mother of a right of action under the coal mining act, which was enacted for the same humane purpose as the general damage act. The* Henry v. Holt case is not contrary to' this conclusion but to some extent in support of it.
The other cases relied upon by counsel are not controlling here and may be distinguished by reason of the terms of the statute involved, the point that‘was decided, or as obiter statements. I shall not attempt to discuss them but will only cite them: Hamman v. Central Coal & Coke Co., 156 Mo. 232, 56 S. W. 1091; Bowerman v. Lackawanna Cor, 98 Mo. App. 308, 71 S. W. 1062; Hackett v. Louisville Co., 95 Ky. 236, 24 S. W. 871; Howard’s Administrator v. Hunter, 126 Ky. 685, 104 S. W. 723; Noble v. Seattle, 19 Wash. 133, 52 Pac. 1013, 40 L. R. A. 822; Manning v. Tacoma R. R. Co., 34 Wash. 406, 75 Pac. 994; Rochester v. Seattle R. & S. R. Co., 67 Wash. 545, 122 Pac. 23, 39 L. R. A. (N. S.) 1156.
Opposing counsel further contend that the action in this case was brought under the general damage act as well as under the coal mining act, and that the plaintiffs could recover under the former act even though they were not entitled to recover under the latter. It is concluded, however, that, as the gist of this action is the alleged negligence of the defendant in not furnishing profs, the action must be held to have been brought under the coal mining act as this is the only act that specifically gives a right of' action for negligence in failing to furnish props.
*559 Third. The next - contention is that the court erred in submitting the question o-f contributory negligence to- the jury-notwithstanding the motions for a non-suit and for a directed verdict.
The evidence, on this question, was such that there was room for a substantial difference of opinion among intelligent, upright and reasonable men, and was not so- conclusive against the plaintiffs that this court will say it was erro-r to- submit the question to- the jury or that the verdict was contrary to the evidence. The action is based upon the negligence of the company in failing to- furnish props, under the coal, mining act. Secs. 641 and 649 R. S. 1908. The verdict o-f the jury on conflicting testimony settled the question o-f negligence, in failing to- furnish pro-ps, against the company, and also- the question of contributory negligence,pro-vided it was proper for the lower court to submit the latter question under the evidence. In the case of Victor Coal Co. v. Muir, 20. Colo. 320, 341, 38 Pac. 378, 386, 26 L. R. A. 435, 46 Am. St. 299, the Supreme Court states the rule governing this question in the following language:
“But where a miner knowingly and voluntarily exposes himself to the falling of a defective roof which he has inspected, and found so defective that a miner of common prudence should deem it unsafe, his negligence is to- be held wilful and sufficient to preclude his recovery for an injury brought upon himself for such exposure.”
In that case the Supreme Court used) the foregoing language in holding that the plaintiff, Muir, was guilty of contributory negligence, as a matter of law, reversing the judgment of the lower court entered on a verdict, and 'holding that the lower court should have directed a verdict for the defendant. The evidence in that case is substantially the same as in this, with slight difference, however, and, after a careful examination of the evidence herein, this court is unable to say that a jury of intelligent, upright and reasonable men might not honestly arrive at the verdict returned in this case. It *560 does not appear that either the son or the father, who were working together, knew the actual condition of the roof and the rock that fell, to the extent that Muir knew of the actual condition of the rock that fell upon him:
Decided November 9, A. D. 1914.
Rehearing denied December 14, A. D. 1914.
For the foregoing reasons the judgment of the lower court is affirmed.: